FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 OCT -6 PM 4: 36

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTOPHER DORSEY, plaintiff | CIVIL ACTION: 03-2022 |
| VERSUS | SECTION: K (Judge Duval) |
| MONEY MACK MUSIC, INC. et al., defendants | MAG: 1 (Judge Shushan) |

**PLAINTIFF'S MEMORANDUM**
**IN OPPOSITION TO MOTION TO DISMISS**

MAY IT PLEASE THE COURT:

**I. JURISDICTION**

Plaintiff will commence by pointing out that this case was removed from state court, plaintiff moved to remand based on lack of federal jurisdiction, and the motion to remand is still pending. As a general rule, the issue of jurisdiction should be resolved before other issues are addressed. Therefore, applying the general rule to the facts of our case, the merits of defendant's motion to dismiss should not be reached until after a ruling on the motion to remand. If the remand is granted, then the motion to dismiss becomes moot.

___ Fee_____
___ Process_____
X  Dktd__BC__
___ CtRmDep____
___ Doc. No.__18__

## II. MOTION TO DISMISS

Defendants have filed a 12(b)(6) motion to dismiss for failure to state a claim. The motion is supported by two attached exhibits (copies of two settlement agreements signed in November 2002) filed under seal.[1]

These two documents are settlement contracts between plaintiff and Cash Money Records, Inc., signed on or about the dates indicated on the written documents. Defendants' reasoning is that, by signing these settlement agreements, plaintiff has waived any and all claims which might otherwise be presented in the current litigation

---

[1] **Under Fed.R.Civ.Pro. 12(b)(6), a motion to dismiss which is supported by exhibits outside the pleadings is, in some cases, transformed into a summary judgment motion. Thus, defendants' decision to attach two exhibits to the motion raises two questions:**

**First, has the motion been transformed from a motion to dismiss into a motion for summary judgment?** Defendants apparently do not think so. See defendants' memorandum in support of motion to dismiss pages 3-4 and footnote 2 on page 4. **Plaintiff agree with defendants that attaching the contracts does not convert the motion into one for summary judgment.** The general rule is that, when there is a dispute over a contract which is not attached to the complaint, the defendant may tender a copy of the contract in support of the motion to dismiss without converting the motion into one for summary judgment. See Stahl v. U.S. Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003); Rosenblum v. TravelByUs.Com Limited, 299 F.3d 657, 661 (7th Cir. 2002); Goodman v. Bowdoin College, 135 F.Supp.2d 40, 46-47 (D. Maine 2001) (contracts referred to in complaint and central to plaintiff's claim may properly be considered on motion to dismiss).

**Second, does it matter whether this motion is viewed as a motion to dismiss or a motion for summary judgment? The answer is, no.** If the motion is viewed as a motion to dismiss, it should be denied as without merit for reasons set forth above.
If the motion is viewed as a motion for summary judgment, it should be denied because there are unresolved material issues of fact (as explained hereafter, the issues of fraud, error, the interrelationships among the various defendants, and the intended scope of the settlement agreements are fact issues which must be resolved after discovery rather than on the pleadings). Additionally or in the alternative, the motion is without merit as to certain claims asserted by plaintiff in this litigation, inasmuch as the settlement agreements, on their face, are intended to resolve only a limited class of claims not including many of the claims presented herein.

2

against any and all of the defendants, irrespective of whether they were parties to the settlement contracts or not.  Defendants invoke the doctrines of claim preclusion and/or res judicata as a basis for dismissing plaintiff's claims under Fed.R.Civ.Pro. 12(b)(6). [2]

Motions to dismiss under 12(b)(6) are disfavored and are rarely granted.  In resolving a motion to dismiss, the court must accept all material allegations of the complaint as true, as well as any reasonable inferences to be drawn from them.  The well-pleaded facts must be reviewed in the light most favorable to the plaintiff.  A complaint should not be dismissed for failure to state a claim unless it appears BEYOND DOUBT that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief.  Meador v. Oryx Energy Co., 87 F.Supp.2d 658, 661 (E.D. Tex. 2000).

Reviewing defendants' motion under this standard, plaintiff would point out that defendants' motion must fail for each of three separate and independent reasons.

---

[2] Res judicata, which incorporates the doctrines of claim preclusion and issue preclusion, may properly be raised by a 12(b)(6) motion. Tyler v. O'Neill, 52 F.Supp. 2d 471, 473-4 (E.D. Pa. 1999); Resource N.E. of Long Island, Inc. v. Town of Babylon, 28 F.Supp.2d 786 (E.D. N.Y. 1998); Meador v. Oryx Energy Co., 87F.Supp.2d 658, 661 (E.D. Tex. 2000) (motion to dismiss may be granted when an affirmative defense, such as res judicata, "appears clearly on the face of the pleadings").

### (1) PLAINTIFF HAS STATED A CLAIM FOR NULLIFICATION AND RESCISSION OF THE SETTLEMENT AGREEMENTS BASED ON FRAUD.

Under Louisiana law, fraud is a ground for rescission of any contract including a settlement contract, and "fraud" includes false statements, statements which are literally true but misleading, and failure to disclose information which the party has a legal duty to disclose. La.Civ.Code Art. 1948; La.Civ.Code Art. 1953; La.Civ.Code Art. 3079 (settlements may be rescinded for fraud or error); Barksdale v. Lincoln Builders, Inc., 32-857 (La.App. 2d Cir. 6/21/00), 764 So.2d 223, 233-34 (rescission for failure to disclose material facts).

Plaintiff has alleged that the settlement agreements are void for fraud or error and has asked the Court to permit plaintiffs to rescind and nullify the settlement agreements. Furthermore, plaintiff has pleaded fraud with specificity, as follows:

> Amended petition paragraph 7: "(D)efendants faxed plaintiff a document which is appended hereto as Exhibit A ... This document was tendered to plaintiff as part of the negotiations leading up to the November 2002 partial settlement agreements ... plaintiff accepted this document as a truthful partial accounting and plaintiff relied on this document in entering into the November 2002 partial settlement agreements."
>
> *(The agreements which plaintiff refers to as the "fall 2002 partial settlement agreements" and the "November 2002 partial settlement agreements" are the two agreements that defendants have tendered under seal in support of their motion to dismiss).*
>
> Amended petition paragraphs 8 and 9 explain in some detail that certain of the representations made in the document tendered as a partial accounting during settlement negotiations were false and, to be specific, defendants claimed that they had paid $ 70,200 to the IRS on plaintiffs' behalf such that this $ 70,200 should be deducted from the amounts that would otherwise be due to plaintiff from defendants as part of the settlement. Plaintiff accepted these assertions as

4

truthful during the settlement negotiations and relied on these assertions in deciding to enter into the settlement contract. Plaintiff has recently discovered that the $ 70,200 was never paid.

Amended petition paragraph 10: "In addition to the above and foregoing, other discrepancies have appeared ... " Plaintiff gives specific examples of discrepancies including forgery of plaintiff's signature on the 1997 return and failure to identify the preparer (giving rise to the inference that no one was willing to take responsibility for the information contained in the tax returns).

Amended petition paragraph 11: "These discrepancies, combined with defendants' continuing refusal to provide a complete accounting to plaintiff, give rise to the inference of intentional fraud." (As an example of a discrepancy giving rise to the inference of intentional fraud, plaintiff explains that plaintiff's signature was forged on a tax return).

Amended petition paragraph 29: "Defendants repeatedly assured plaintiff and plaintiff's representatives that all had been done in good faith ... and that the existing problems resulted from poor communications and/or Mr. Dorsey's own misunderstandings and mistakes."

Amended petition paragraph 31: During settlement negotiations, "defendants continued to furnish assurances of good faith and promises to account ... In reliance on these promises and representations, plaintiff entered into the partial settlement agreements described in the original petition." (However, as already noted in petition paragraph 10 and also noted in paragraph 32, these assurances proved to be false inasmuch as no accounting was ever provided).

Amended petition paragraphs 37: Plaintiff prays to rescind and nullify the November 2002 partial settlement agreements.

In sum, plaintiff has alleged fraud and has specifically pleaded facts which, if true, support the inference that: (1) defendants deliberately lied about the $ 70,200 "payments" which appear on the partial accounting statement in order to obtain a more favorable settlement from plaintiff; (2) defendants (or some of them) caused the forgery of plaintiff's signature on a tax return; (3) defendants concealed these actions from plaintiff during settlement negotiations by various means including failing to disclose

5

information which they had a legal obligation to disclose [3] ;   false assurances of subjective good faith; and false promises to to furnish an accounting which they did not provide (and apparently never intended to provide).

Plaintiff has alleged reliance on the fraudulent representations and has asked that The settlement agreements be declared null and void because induced by fraud. For the purposes of this motion to dismiss, plaintiff's allegations of fraud must be taken as accurate.  Thus, plaintiff has stated a claim for nullification of the settlement agreements based on fraud or error.  The merits of defendants' res judicata/claim preclusion arguments cannot be resolved until the fraud issue is resolved, which requires discovery (at a minimum) and trial on the merits (if discovery produces conflicting evidence on the issue of fraud). Thus, the motion to dismiss cannot be granted.

### (2) THE SETTLEMENT AGREEMENTS WERE PARTIAL SETTLEMENTS GOVERNING THE PARTIES' RIGHTS UNDER ONLY TWO OF MULTIPLE CONTRACTS.

As explained in the original and amended petition, the parties have had business relationships lasting a decade or more. During this time period, plaintiff engaged in songwriting, recording, and live performances, both individually and as part of a group. During this time period, by plaintiff's count, the parties entered into at least five separate agreements as follows:

> (i) An oral contract between plaintiff and the Williams brothers pursuant to which the Williams brothers undertook to act as plaintiff's manager and agent, thus assuming a fiduciary duty to plaintiff

---

[3] It will be remembered that, during much of the pertinent period, the Williams brothers acted as plaintiff's agents and business managers such that they had a fiduciary duty to plaintiff.

    (ii) An early written agreement which has been lost or destroyed such that the terms will be difficult to establish;

    (iii) May 1998 Songwriters' Agreement
        (parties: plaintiff and Cash Money Records, Inc.)

    (iv) October 15, 1998 Exclusive Recording Agreement
        (parties: plaintiff and Cash Money Records, Inc.)

    (v) November 1, 1998 Songwriters' Agreement
        (parties: the four members of the Hot Boys recording group including plaintiff and Cash Money Records, Inc. )

    (vi) November 1, 1998 Exclusive Recording Agreement
        (parties: Hot Boys including plaintiff and Cash Money Records, Inc.)

The various agreements govern various aspects of the parties' business relationships. For example, the October 1998 and November 1998 contracts do not purport to transfer ownership of, or any interest in, the songs identified in the May 1998 contract. For a second example, none of the written agreements purports to deal with revenue from plaintiff's live performances.

On or about November 1, 2002, plaintiff and Cash Money Records, Inc. entered into the two purported settlement agreements which defendants now rely on as disposing of all issues presented by the current litigation. Examination of these two settlement agreements will show the following. Both settlement agreements are between plaintiff ("Artist") and Cash Money Records, Inc. ("Company").

One of the two purported settlement agreements states:

> Artist and Company are parties to that certain Exclusive Recording Agreement dated as of the 15th day of October 1998 (the "Agreement") ... Artist and Company deem it in their respective best interests formally terminate ... the

7

Agreement ... Artist releases and discharges Company... its subsidiaries, affiliates ... officers, directors, employees, shareholders ... from any and all claims, demands ... which Artist ... may have against Company ... **by reason of any matter which arises from or relates to the Agreement** *(emphasis added).*

*(The quoted language is from page 1 unnumbered preliminary paragraphs and page 2 numbered paragraph 3).*

**Examination of this language will show that the claims which are being settled and released are claims arising from or relating to the October 15, 1998 Exclusive Recording Contract ("the Agreement"). Claims which do not "arise from or relate to" the October 15, 1998 agreement are not being settled.**

The second settlement contains language which is identical except that the second settlement deals with the November 1, 1998 Exclusive Recording Contract. Thus, **the second settlement deals with claims arising under the November 1, 1998 agreement. Claims which do not arise from or relate to the November 1, 1998 agreement are not being settled.**

In sum, the two settlement agreements are limited by their own terms to disputes arising under two of the multiple contracts between the parties. The settlement agreements do not refer to, or purport to settle, claims which may arise under the May 1998 contract, the second of the two November 1998 contracts, the oral representation agreement, or the early lost contract. The settlement agreements do not refer to, or purport to settle, claims arising out of defendants' involvement in plaintiff's income tax matters. The settlement agreements do not refer to, or purport to settle, claims arising out of plaintiff's live performances as opposed to songwriting and recording. And,

obviously, the settlement agreements – signed in November 2002 – do not operate as a release of future tort claims such defendants' January 2003 misappropriation of plaintiff's professional reputation by the dissemination of public statements which falsely claim a continued association between plaintiff and defendants (original petition paragraph 32).

In sum, even if the settlement agreements are eventually determined to be valid and binding, these settlement agreements cannot serve as a basis for dismissing the entire case, because most of the claims asserted by plaintiff are NOT within the scope of these settlement agreements.

### (3) MOST OF THE DEFENDANTS NAMED HEREIN WERE NOT PARTIES TO THE SETTLEMENT AGREEMENTS AND, THUS, THESE DEFENDANTS CANNOT CLAIM TO HAVE BEEN RELEASED UNDER THE SETTLEMENT AGREEMENTS.

Similarly, assuming for the purposes of argument that the settlement agreements are valid and enforceable, nevertheless examination of the settlement agreements will show that most of the defendants herein are NOT entitled to claim the protection of the settlement agreements.

To be specific, the only party who has settled (or purported to settle) with plaintiff is Cash Money Records, Inc. Most of the defendants in the current litigation were not parties to the settlement agreements and most of the defendants in the current litigation are not referenced in the settlement agreements. Why, then, should the settlement agreements be viewed as releasing these defendants?

Defendants point to generic provisions which release CMR and "its corporations, subsidiaries, affiliates, partners, participants, licensees, sublicensees, grantees, officers, directors, employees, shareholders, principals, agents, representatives, attorneys, heirs and assigns." Defendants ask this Honorable Court to hold, as a matter of law, that each and every one of the numerous defendants named herein is a CMR corporation, subsidiary, etc. released by the settlement agreement.

The problem with this is that, as to most of the defendants, there is nothing in the petition, amended petition, or anywhere else in the record that indicates that these defendants can properly be characterized as one of CMR's corporations, subsidiaries, etc. To be specific, plaintiff has identified the Williams brothers as officers, employees, and shareholders of CMR (original petition paragraph 2) such that these defendants may reasonably claim the protection of the generic paragraphs of the settlement agreements *for actions taken in their capacity as officers, employees, and stockholders of Cash Money Records, Inc. which are within the scope of the two settlement agreements.* However, plaintiff has pleaded that he does not know who employed defendant Michelle Diaz during the relevant time period (original petition paragraph 3) and he does not know exactly how the other defendants are related to CMR (amended petition paragraph 3: "Plaintiff does not know exactly how the various entities named as defendants herein are related or exactly what role these entities played in the management of plaintiff's affairs.")

10

Thus, on the face of the pleadings, the only defendants who can claim protection of the settlement agreements are CMR itself and the Williams brothers *for actions taken in their capacity as officers, employees, and stockholders of Cash Money Records, Inc. which are within the scope of the two settlement agreements..* [4]

After the interrelationships among the various defendants are explored during discovery, it may eventually turn out that some of the other defendants are also entitled to claim protection as "corporations, subsidiaries, etc. ..." but there is no reason to extend the protection of the settlement agreement to these other defendants on the face of the pleadings.

**Conclusion:** For all the above and foregoing reasons, the motion to dismiss should be denied.

Respectfully submitted by,

_____
Donald F. de Boisblanc         #4786
Donald F. de Boisblanc, Jr.    #23462
J. Rand Smith, Jr.             #27090
Attorneys at Law
410 South Rampart Street
New Orleans, Louisiana  70112
Phone: (504) 586-0005
Fax:   (504) 586-0007

---

[4] Plaintiff would suggest that the settlement agreement cannot be construed as releasing the Williams brothers for actions they took in a capacity OTHER THAN officer, employee, or shareholder of CMR.  Thus, the settlement agreements provide, at most, a partial release of the Williams brothers.

11

## CERTIFICATE

I certify that I have served a copy of the above and foregoing on all counsel of record by hand or by placing same in the U.S. mail postage prepaid this 6 day of October, 2003, properly addressed as follows:

Bruce v. Schewe, Esq.
Phelps Dunbar, L.L.P.
Canal Place
365 Canal Street Suite 2000
New Orleans, LA 70130